UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIJAH RABELLDE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No. 4:17-cv-05031-KAW<br><br>**ORDER TO SHOW CAUSE**<br>Re: Dkt. Nos. 26, 27, 28, 29, 30 |

On December 11, 2018, the Court received a letter from Plaintiff Alijah Dante Rabellde ("Plaintiff") dated December 7, 2018 ("the letter").[1] Ex. 1. Two envelopes – each one enclosing one copy of the letter – were sent to the Court, with one of the envelopes being marked "Certified Mail." Ex. 2. In the letter, Plaintiff requested additional time to obtain new counsel. Accordingly, the Court EXTENDS the deadline for Plaintiff to obtain new counsel to **January 24, 2019.**

In the letter, Plaintiff also requested the Court's "help in understanding what is going on with [his] case" and also stated that his "current counsel Mr. Ben Glen has not been responsive or given me legal advice. He has only constantly threatened to abandon me if I don't sign a substitution document to act pro se. That request is ridiculous and unacceptable to me."

Plaintiff also states in the letter that he wants to give notice of the "misleading and false statements" made to the Court (Ex. 1 at 1) in Mr. Glen's letter dated November 7, 2018 and filed with the Court on November 27, 2018 ("Glen letter") (Dkt. No. 26).

First, Plaintiff states in the letter that the second paragraph of the Glen letter contains misleading statements, particularly Mr. Glen's statement that Plaintiff's case was "a matter that Mr. Woolfe took on himself as he was the only attorney who handled medical malpractice cases."

---

[1] The Court notes that Plaintiff's letter is an improper *ex parte* communication that was not filed on the docket. As such, the Court now files and attaches it as Exhibit 1 ("Ex. 1") to this Order.

(Dkt. No. 26 at 1.) Plaintiff states that "[a]fter filing the three Federal Tort Claims and taking those as far as I could with [a] VA attorney in Los Angeles, I vetted Mr. Glen's firm and Mr. Woolfe online. Then, [I] spoke with Mr. Woolfe by phone and scheduled an in-person meeting. In that meeting all seemed fine and [I] wanted Mr. Glen's firm to represent[] me. Mr. Woolfe related he needed to obtain permission from Mr. Glen before taking on my case. After about two weeks, I was contacted by Mr. Woolfe relating [that] Mr. Glen had agreed his firm would represent me. I was later contacted by Mr. Glen's paralegal to sign a Retainer Agreement. So, Mr. Glen's statement that my case was one that 'Mr. Woolfe took on himself' is misleading." (Ex. 1 at 2.)

Second, Plaintiff states in the letter that the fourth paragraph of the Glen letter contains false statements, particularly Mr. Glen's statement that he "learned that Mr. Woolfe had been wrongfully and fraudulently inserting his own personal contact information on pleadings, discovery and correspondence, rather than [his] firm's contact information." (Dkt. No. 26 at 2.) That is, Plaintiff states in the letter that "Mr. Glen's statements that he was unaware of Mr. Woolfe['s] use of different contact information other than the firm's contact address, phone numbers, and email address is false" and even though "[t]here are many documented examples of this being a false statement," at this time, Plaintiff just provided one example that occurred as "far back as October 2017 shortly after the complaint was filed," where Plaintiff "contacted Mr. Glen directly about issues with Mr. Woolfe not being responsive in a timely manner or sending [him] requested supporting documentation." (Ex. 1 at 2.) Specifically, on October 20, 2017, Plaintiff and Mr. Glen had a phone conversation about Plaintiff's concerns over Mr. Woolfe's "dishonesty and use of alternative contacts from the firm" and Plaintiff states in the letter that "Mr. Glen gave his assurances that Mr.Woolfe['s] use of a different physical address, phone numbers, and email address was fine." (*Id.*) After their phone conversation, Plaintiff, Mr. Glen, and Mr. Woolfe had an email exchange where Mr. Glen directed Mr. Woolfe to send to Plaintiff the requested supporting documentation. (*Id.*) Thus, Plaintiff reiterates that "Mr. Glen's statements about not being aware [that] Mr. Woolfe used different contact information other than his firm is a false statement." (*Id.*)

Third, in the letter, Plaintiff also expressed confusion as to the proper venue of this case. The Court would like to clarify that the Oakland and San Francisco Divisions of the U.S. District

Court for the Northern District of California (federal court) are considered the same venue in civil cases.[2] Because the case number of the present matter is 4:17-cv-05031-KAW and begins with the number "4," it is assigned for all purposes in the Oakland Division.

Finally, although it is not an issue that Plaintiff raised, it appears that the last paragraph of the second page of the Glen letter contains misleading, dishonest or false statements. In that paragraph, Mr. Glen states that "[a]lthough [he has] been admitted to the Northern District Court," he "does not know whether [he has] made an appearance [in this District] at all, but if [he] did, it probably would have been 30 years ago." (Dkt. No. 26 at 2.) Upon review of the electronic records in the District's docket, Mr. Glen's firm has appeared as counsel of record in at least three other cases,[3] and previously, Mr. Glen himself has specifically appeared as lead counsel in the 2012 case of *Tucker v. City of Richmond et* al, No. 3:12-cv-01829-MEJ.[4] Therefore, it appears that the above statement Mr. Glen made in his letter about not appearing in this District for 30 years is not entirely honest or accurate.

Mr. Glen is reminded, first and foremost, of an attorney's duty of candor before the Court. *See* Model Rules of Prof'l Conduct R. 3.3(a)(1) ("A lawyer shall not knowingly: make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"); Cal. Rules of Prof'l Conduct 3.3(a)(1) (identical); Civil L.R. 11-4(a)(4) ("Every member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must: … Practice with the honesty, care, and decorum required for the fair and efficient administration of justice"). Thus, the various allegedly false statements made in the Glen letter raised above are potential violations of at least Civil Local Rule 11-4(a)(4).

---

[2] "Except as provided in Civil L.R. 3-2(c), all civil actions which arise in the counties of Alameda, Contra Costa, Marin, Napa, San Francisco, San Mateo or Sonoma shall be assigned to the San Francisco Division or the Oakland Division." Civil L.R. 3-2(d).
[3] Those three other cases are:
(i) *Romero et al v. Amtrak et al*, No. 3:08-cv-00540-JL (filed 1/24/08; closed 7/16/08)
(ii) *Tucker v. City of Richmond et al*, No. 3:12-cv-01829-MEJ (filed 4/12/12; closed 11/28/12)
(iii) *Towne v. Target Corp*, No. 3:18-cv-03929-JCS (filed 6/29/18)
[4] Mr. Glen also was the sole lead counsel in the case (although his name appears twice as both "Ben Glen" and "Bennett Roger Glen" on the docket), and he also litigated as well as filed pleadings in the case, such as an opposition to a motion to dismiss. (*See* Dkt. No. 11 in the *Tucker* case, No. 3:12-cv-01829-MEJ).

Moreover, Mr. Glen appears to be obstructing Plaintiff's ability to obtain new counsel because Plaintiff states in the letter that "Mr. Glen refused to send attorneys [Plaintiff's] case file." (Ex. 1 at 3.) This is a violation of multiple Civil Local Rules and rules of professional conduct. *See* Cal. Rules of Prof'l Conduct 1.16(d) ("A lawyer shall not terminate a representation until the lawyer has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, such as giving the client sufficient notice to permit the client to retain other counsel"); Civil L.R. 11-4(a)(5)-(6) ("Every member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must: … (5) Discharge his or her obligations to his or her client and the Court; and (6) Assist those in need of counsel when requested by the Court").

Accordingly, the Court hereby sets a Status Conference to be held on **February 7, 2019** at 1:30 p.m. in Courtroom 4 on the 3rd Floor of the Oakland Courthouse at 1301 Clay Street, Oakland, CA 94612 in order to address the above delineated issues and concerns. The Court further ORDERS Plaintiff's counsel, Mr. Ben Glen, to APPEAR at this Status Conference and SHOW CAUSE as to why the Court should not report him to the California State Bar and the Court's Standing Committee on Professional Conduct for obstructing his client's ability to obtain new counsel and for the potential violations of the professional conduct and Civil Local Rules cited above. Mr. Ben Glen is further ORDERED to file a Status Report by **January 24, 2019** addressing the issues raised in this Order.

IT IS SO ORDERED.

Dated: December 18, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge