UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALIJAH RABELLDE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Defendant. | Case No. 4:17-cv-05031-KAW<br><br>**PRETRIAL CONFERENCE TENTATIVE RULINGS** |

### I.   MOTIONS IN LIMINE

Relevant evidence is any evidence that has any tendency to make a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. The Court has discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

| MIL | Motion | Ruling | Reason/Explanation |
|---|---|---|---|
| $P_1$ | To exclude all evidence of Plaintiff's 2010 bankruptcy proceeding | GRANTED IN PART AND DENIED IN PART | Defendant opposes. Defendant may present evidence of Plaintiff's bankruptcy to demonstrate the extent of Plaintiff's damages and whether his mental anguish was caused by the surgeries or pre-existing financial strain. Defendant may not present evidence of Plaintiff's bankruptcy to demonstrate employability or credibility (other than for impeachment) because his bankruptcy is not probative of |

| | | | |
|---|---|---|---|
| | | | employability or motive to misrepresent. |
| P₂ | To exclude all evidence of Plaintiff's other medical injuries | **DENIED** | Defendant opposes. Evidence of Plaintiff's prior medical injuries are relevant to whether Plaintiff's lost wages and medical damages were caused by the surgeries or previously existing injuries. |
| D₁ | To preclude Plaintiff from proffering evidence on, or in support of, any claims not alleged in his administrative tort claims, including, but not limited to, a claim for lack of informed consent | **GRANTED** | Plaintiff opposes. Plaintiff is precluded from claiming that he lacked informed consent. Plaintiff is allowed to introduce evidence of the Ranitidine prescription, but is not permitted to argue that the prescription itself was professional negligence. His claim is limited to the two surgeries performed by the VA. |
| D₂ | To preclude Plaintiff from offering expert opinion testimony or evidence from the ten percipient medical doctors on Plaintiff's witness list who were not disclosed as either retained or non-retained experts | **GRANTED IN PART AND DENIED IN PART** | Plaintiff opposes. The doctor witnesses are permitted to testify as non-retained experts because Plaintiff's failure to properly designate them is harmless. Thus, they are limited to testifying regarding Plaintiff's treatment. Dr. Kim is permitted to testify regarding his "causation reports," which were written contemporaneously with Plaintiff's treatment and summarizes his opinion regarding Plaintiff's prognosis. |
| D₃ | To preclude Plaintiff from proffering evidence on any claims concerning the alleged improper prescription of Ranitidine, including evidence of whether such medication prescribed by VA doctors for Plaintiff's previously existing heart condition caused excessive tissue growth in his breasts | **GRANTED IN PART AND DENIED IN PART** | Plaintiff only opposes regarding the ability to introduce evidence that Ranitidine caused excessive tissue growth. While Plaintiff is precluded form arguing an improper prescription claim, Plaintiff is permitted to offer evidence that the Ranitidine prescription caused excessive tissue growth. |

| | | | |
|---|---|---|---|
| D4 | To preclude testimony and opinions from Ronald Iverson, M.D., F.A.C.S. | **DENIED** | Plaintiff opposes. Dr. Iverson is a qualified expert in plastic surgery, and in gynecomastia procedures specifically, and he adequately explained why he based his opinion on the results received and why the surgeries fell below the standard of care. |
| D5 | To preclude Plaintiff from proffering evidence on, or about, any allegation of negligence or medical malpractice against Gordon Lee, M.D., F.A.C.S. at trial | **GRANTED** | Plaintiff opposes. There is no probative value in evidence regarding claims that have no adverse findings, and, even if there was, any probative value would be heavily outweighed by the risk of unfair prejudice. |
| D6 | To preclude Plaintiff from proffering evidence on, or about, a theory of liability based on res ipsa loquitor because Plaintiff first alleged that theory on March 22, 2022 | **DENIED** | Plaintiff opposes. While Plaintiff is correct that res ipsa loquitor is not a theory of liability in and of itself that requires notice to Defendant, he has not explained how it is applicable to the instant facts because the nature of Plaintiff's purported injury, and the number of medical procedures, appears to bely an inference of negligence. |

## II.   EVIDENTIARY ISSUES

### A.   Defendant's objections to Plaintiff's Use of Deposition Excerpts

Defendant objects to Plaintiff's use of deposition excerpts at trial. (Def.'s Dep. Obj., Dkt. No. 153 at 2.)  Specifically, Defendant argues that Plaintiff's Pretrial Disclosures (Dkt. No. 142) provided that he "does not anticipate presenting evidence by deposition pursuant to Fed. R. Civ. Proc. 26(a)(3)(iii)." (Dkt. No. 142 at 3.)  Moreover, in the Joint Pretrial Statement, Plaintiff only explicitly designated one witness, Bina Lu, M.D., as being presented by deposition. (Def.'s Dep. Obj. at 2 (citing Joint Pretrial Statement, "JPS," Dkt. No. 145 at 11).)  Dr. Lu was Plaintiff's primary care physician prior to his November 24, 2014 surgery. (JPS at 11.)  The Court notes that, despite Plaintiff's representation in his Pretrial Disclosures that he would not be presenting evidence by deposition, he identifies four other VA-related doctors who may testify "by deposition designation or live testimony." *See id.*  Three of these medical professionals—Drs. McCloskey, Thomas, and Ulvila—will present live testimony in Defendant's case in chief, so they

are presumably available to testify in person. Plaintiff is also permitted to impeach these witnesses with their prior deposition testimony. *See* Fed. R. Civ. P. 32(a)(2).

Federal Rule of Civil Procedure 32 permits the use of deposition testimony at hearing or trial under certain circumstances. Since Plaintiff's pretrial disclosures indicated that he was not going to use any deposition testimony, and he presumably has not identified which testimony he intends to present at trial, the Court is inclined to sustain the objection.

### B. Plaintiff's Objections to Defendant's Exhibits

Plaintiff objected to the vast majority of Defendant's exhibits on the grounds that they lack authentication, lack foundation, and are not relevant, but did so without explaining the bases for the objections. (Pl.'s Obj., Dkt. No. 160.) For example, Plaintiff objects to entire expert reports on hearsay grounds without identifying which part of the reports are objectionable. *See Id.* at 5.

Thus, to the extent that they are not separately addressed as motions in limine, the Court is inclined to overrule all of the objections as premature, unexplained or frivolous, so Plaintiff should be prepared to discuss at the pretrial conference.

### C. Defendant's Objections to Plaintiff's Exhibits

The Court has already sustained Defendant's objections to Exhibit Nos. 10, 12, 13, 15, and 19. (Dkt. No. 166.) The remaining objections will be addressed at the pretrial conference, but the parties are encouraged to meet and confer regarding the remaining objections beforehand in an effort to conserve the Court's limited judicial resources.

### D. Exhibits

The Court is committed to reducing any unnecessary time spent in the courtroom, so the parties are ordered to meet and confer regarding stipulating to the admission of any exhibits to which they do not object.

### E. Defendant's Objections to Plaintiff's Witnesses

| **Motion** | **Ruling** | **Reason/Explanation** |
|---|---|---|
| **Neil Gordon (Dkt. No. 148)** | **SUSTAINED AS UNOPPOSED** | Plaintiff did not respond. Plaintiff supplemented his initial disclosures on March 9, 2022. Mr. Gordon was not |

4

| | | |
|---|---|---|
| | | disclosed as a potential witness until March 29, 2022, the date the parties filed their initial pretrial papers, so the Court is inclined to find the disclosure untimely under Rule 26. |
| **Dr. Roy Kim (Dkt. No. 149)** | **SUSTAINED IN PART** | Plaintiff responded. Dr. Kim was not designated as a retained or non-retained expert, so his testimony is limited to his treatment of Plaintiff, which includes his observations of Plaintiff's pain and required future treatment if treatment is ongoing. He is not permitted to compare Plaintiff to other patients, nor is he designated to offer an opinion regarding Plaintiff's mental health. |
| **Justin Lewis (Dkt. No. 150)** | **SUSTAINED IN PART** | Plaintiff responded. Mr. Lewis is a qualified damages expert, but the assumptions underlying his Scenario 1 (calculation based on Plaintiff obtaining a $90,000 per year job based on Plaintiff's reports of positions he interviewed for) is too speculative and he is not a vocational expert who can furnish an opinion that Plaintiff was qualified for those positions at the time of application. The calculation under Scenario 2 (based on Plaintiff's past wages and adjusted for inflation) is permitted. |

### III.   OTHER EVIDENTIARY ISSUES

**A.   Lawrence Whitcomb**

While the parties lodged a late discovery letter on March 25, 2022, which was denied, Plaintiff is advised that, despite the exclusion, the Court is inclined to permit testimony from Lawrence Whitcomb, Plaintiff's former employer, for the purposes of impeachment.

**B.   Evidence regarding the VA Community Care Program**

The fact that Plaintiff received later surgical procedures outside the VA, be it through the Community Care Program or through other means, does not appear to be relevant to any of Plaintiff's claims.  Plaintiff should be prepared to discuss why this evidence should be allowed.

///

5

## IV. FORTHCOMING FILINGS

The parties are reminded of their obligation to file the documents discussed below. They shall furnish two sets of chambers copies in binders, with each document tabbed. The chambers copy is due the day after each document is filed. Additionally, the parties are required to email a Word version (.docx) of each filing to KAWpo@cand.uscourts.gov.

### A. Joint Statement of Claims and Defenses

As previously ordered, the parties shall file a Joint Statement of Claims and Defenses by April 25, 2022. (*See* Dkt. No. 102 at 7; Dkt. No. 123 at 1.) The joint statement shall identify each claim for relief, a brief statement of the factual basis for the claim, the elements of the claim, the burden and standard of proof, and whether the parties have any disagreements as to the elements, burden, and/or standard of proof.

### B. Proposed Findings of Fact and Conclusions of Law

The proposed findings shall be in a chart form that identifies the source of the finding (e.g., exhibit number or anticipated testimony) and cross references the elements of proof identified in the joint statement of claims and defenses. Per the operative case management order, this shall be filed by April 25, 2022. (*See* Dkt. No. 102 at 7; Dkt. No. 123 at 1.)

Within 7 days of the conclusion of the bench trial, the parties shall provide a redlined version that reflects what was presented at trial.

### C. Joint Statement of Stipulated Facts

The statement of stipulated facts shall be numbered. Per the operative case management order, this shall be filed by April 25, 2022. (*See* Dkt. No. 102 at 7; Dkt. No. 123 at 1.) The parties are strongly encouraged to review the "disputed facts" in the Joint Pretrial Statement to determine if there are any facts that are not disputed. For example, the Court cannot fathom why the parties would dispute the character of Plaintiff's separation from the Navy, which should be readily ascertainable based on service records created by the Government.

## V. COVID PRECAUTIONS

In light of the ongoing pandemic, the undersigned is committed to keeping the parties, counsel, witnesses, and court staff as safe as possible. The parties should be prepared to discuss

the ability to pivot to a hybrid Zoom trial should there be a positive COVID-19 case or exposure.

Currently, universal masking in the courthouse is no longer required, but the parties should be prepared to discuss other COVID-related issues, including the vaccination status of counsel, the parties, and witnesses, and what other precautions may be taken to keep everyone safe. The Court is inclined to require those who are not fully vaccinated and boosted to remain masked during the duration of the trial, but it is open to permitting those who show proof of full vaccination (including a booster, if eligible) to forego masking unless either of the parties object. Notwithstanding, the Court may impose a mask mandate on all present without regard to vaccination status should the number of community cases rise or if there is a change in guidance from local public health agencies.

Finally, all persons entering the courthouse are required to review the Northern District's "COVID-19 Pre-screening Questionnaire," available online at *https://www.cand.uscourts.gov/wp-content/uploads/clerks-office/CAND-COVID-19-Pre-Screening-Questionnaire_8-2-2021.pdf*. Anyone experiencing any symptoms, including fever or cold-like symptoms, is not permitted to enter the courthouse. If this happens, the parties are directed to notify the courtroom deputy at kawcrd@cand.uscourts.gov.

IT IS SO ORDERED.

Dated: April 19, 2022

KANDIS A. WESTMORE
United States Magistrate Judge